UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

**Skye Taylor**
  **Plaintiff**                                                    Civil Action No._____

v.

**Volkswagen of America Inc. (VW);**
**Cascade Chrysler Inc. (Karmart Volkswagen);**
**Hanson Motors Inc. (Hanson Motors Volkswagen); and**
**Roger Jobs Motors Inc. (Roger Jobs Volkswagen)**
  **Defendants**

                                                           **COMPLAINT AND DEMAND FOR JURY TRIAL**

**Summary of Complaint:**

1. Since on or about October 5th, 2007, Defendants' Dealerships denied the Plaintiff the right to purchase a new vehicle, solely based on the discrimination of the Plaintiff's national origin, alienage, and/or citizenship.

2. The Plaintiff alleges that the Defendants have conspired amongst each other and their related affiliate Dealerships, and have designed, implemented and promulgated policies and practices, which includes a written agreement between the Defendants that openly, willfully, deny the sale of new motor vehicles to Consumers' based on their national origin, alienage, and/or citizenship. The mutual intent of the conspiracy was to prevent Consumers on both sides of the US/Canada border from taking advantage of buying opportunities as described herein, and to increase their profits at such Consumers' expense.

3. The Plaintiff claims that the Defendants(s'):

   a. Engaged in a pattern and practice of national origin, alienage and/or citizenship discrimination to deny the sale of new motor vehicles;

   b. Discrimination to deny the Plaintiff the right to make and enforce contracts violates 42 U.S.C. § 1981;

   c. Conspiracy to deprive the Plaintiff equal privileges under the law violates 42 U.S.C. § 1985;

    d.   Discrimination to deny the Plaintiff the right to equal enjoyment of goods violates 42 U.S.C. § 2000a;

    e.   Conspiracy to restraint trade violates 15 U.S.C. § 1;

    f.   Conspiracy to inter-brand monopolize violates 15 U.S.C. § 2;

    g.   Dealership agreement [contract] intended to restraint trade violates 15 U.S.C. § 3;

    h.   Discrimination and unfair methods of competition violate 15 U.S.C. § 45;

    i.   Have been unjustly enriched in the form of additional revenue as a result of their unlawful conduct.

4.   The Plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and an award of costs, expenses, and fees, and any other compensation this Court deems just and proper for the injuries the Plaintiff sustained by means of Defendants' misconduct.

**Jurisdiction and Venue:**

5.   This Court has jurisdiction over this action pursuant to 15 U.S.C §§1, 2, 3, 45 and 28 U.S.C. §§1331, 1343(a), 1391, and 42 U.S.C §§ 1981, 1985, 2000a.

6.   Venue is proper in this district pursuant to 28 U.S.C. §1391 as the unlawful acts described in this Complaint were carried on, in part, within this district.

**Parties to this Complaint:**

7.   **Plaintiff:**

    a.   Plaintiff, Skye Taylor resides in Vancouver, British Columbia, Canada (a 35 minute drive to the US border).

8.   **Defendants:**

    a.   Defendant, Volkswagen of America Inc. referred to as [VW], is a corporation organized under the laws of Michigan, with it's principle place of business at 3800 Hamlin Road, Auburn Hills, Michigan, 48326;

    b.  Defendant, Roger Jobs Motors Inc., does business under the name 'Roger Jobs Volkswagen', a VW dealership located at 2200 Iowa St., Bellingham, WA 98229 (a 24 minute drive from the Canadian border);

    c.  Defendant, Cascade Chrysler Inc., does business under the name 'Karmart Volkswagen', a VW dealership located at 1725 Bouslog Road, Burlington, WA 98233, (a 45 minute drive from the Canadian border); and

    d.  Defendant, Hanson Motors Inc., a VW dealership located at 2300 Carriage Loop SW, Olympia, WA 98502 (a 174 minute drive from the Canadian border).

9.  Defendant, VW, manufactures and distributes several new motor vehicles, including Jetta, Beetle, Passat and Rabbit etc.

10.  Defendants, Cascade Chrysler Inc., Hanson Motors Inc., and Roger Jobs Motors Inc., referred to as the [Dealerships] have an [Automobile Dealer Sales and Service Agreement / *franchise agreement*] with VW to sell their vehicles to the Final Consumer (Consumers).

## Statement of Claim

**The Defendants' Cause For Such A Conspiracy And Discrimination Policy:**

11.  VW sells their manufactured vehicles in both Canada and the US through their networks of authorized dealerships on both sides of the border.

12.  Safety and environmental regulations in both the US and Canada governing the sale of new vehicles are approximately the same. So, vehicles manufactured for sale in the US and Canada are substantially identical, with little to no modifications required.

13.  Consequently, VW sells basically the same identical new vehicles in both the US and Canada.

14.  In 1993, Canada, Mexico and the US entered into the North American Free Trade Agreement ("NAFTA"), *to eliminate barriers to trade in, and facilitate the cross-*

*border movement of, goods and services between* the parties to that agreement. One of the key objectives was *to promote conditions of fair competition in the free trade area*. As a result of NAFTA, it became easier and more cost efficient to purchase high cost goods, such as new vehicles, between the parties to that agreement.

15. Due to the differential pricing of new vehicles and the currency exchange rate between the two countries, it has been advantageous for Consumers to visit dealerships cross-border to compare prices on identical or comparable new vehicles before purchasing to locate the absolute lowest cost.

16. Accordingly, when the fluctuations in the currency market provided for the opportunity, such as during 1999-2003, when the Canadian dollar averaged more than 152 cents to the US dollar, residents in the United States would have saved thousands of dollars by purchasing new vehicles from Canadian dealerships taking advantage of the weak Canadian dollar.

17. Similarly, on November 7, 2007 the Canadian dollar was trading below 93 cents to the US dollar, Canadian residents that purchase their new VW vehicles in Canada would have saved thousands by purchasing new vehicles from US dealerships.

18. For example, on November 7, 2007, VW advertised it's popular vehicle, the Jetta in the US for $16,990 when the identical or comparable vehicle was advertised in Canada for $23,475. At the Nov 7-07 exchange rate of 93 cents to the US dollar the savings would be US$7983. (Over 30% savings). Another example is the Passat; it was advertised in the US for $23,915 when the identical or comparable vehicle in Canada was advertised for $30,975. A savings of over US$9037.

19. With such savings as described above, Consumers would cross border shop. Dealerships would then be forced to be competitive, reducing profits due to the natural reduction of the domestic price of vehicles as the price reacted to the competition of the imported vehicles.

20. VW and their authorized Dealerships perceived these cross border shoppers as a problem. Through natural logic this problem being defeated would mean extra profits for the Defendants (VW and the Dealerships).

**The Intent Of The Conspiracy**

21. The mutual intent of this conspiracy for the Defendants was to:

    a. Prevent consumers on both sides of the US/Canada border from taking advantage of these buying opportunities as described herein;

    b. Eliminate competition from cross border dealerships;

    c. Maintain unreasonably artificially high prices of their new vehicles; and

    d. Increase their profits at such Consumers' expense.

22. The conspiracy and conduct was aimed at buyers in both the United States and Canada, and damages Consumers and Sales Staff in Canada and the United States respectively, depending on the US/Canada currency exchange rate.

**The Actions Committed To Fulfill The Conspiracy**

23. The actions in this conspiracy have been committed by the Defendants, and that the same were authorized, ordered, or done by their officers, agents, employees, or representative while actively engaged in the management of each of the Defendants' affairs.

24. Defendants communicated with one another and agreed amongst themselves and each other to act to stop the cross shipping of new vehicles across the Canada/US border.

25. In order to satisfy Dealerships agreeing to this conspiracy that other Dealerships cross-border wouldn't falter when the exchange rate changed in their interest, VW implemented restrictions to enforce these constraints on their Dealerships, which includes threatening to terminate the Dealerships, which refuse to comply.

26. A signed letter issued by VW dated October 16th 2007 states the restriction: *Volkswagen has a restriction in the dealer franchise agreement that prevents dealers*

*from selling vehicles to Canadian residence…. The same restriction applies to U.S. residents purchasing vehicles from Canadian dealers…"*

27.  The US Dealerships that profited during 1999-2003 as a direct result of the conspiracy where the US consumers were denied to purchase new vehicles in Canada are now on the other side, where the exchange rate is now in their favor and an easy profit can be made by the high number of Canadians crossing the border to purchase new vehicles. But because of their past agreement to the conspiracy they have denied the easy sales from Canadian shoppers to complete the full circle of the conspiracy.

28.  Defendants (VW and the Dealerships) confirmed their agreement in the conspiracy by openly discriminating on the basis of the Consumers' national origin, alienage, and/or citizenship.

29.  Defendants (VW and the Dealerships) took extraordinary steps to deceive Consumers by disguising and concealing the discrimination that they were committing - informing Consumers they denied the equal right to purchase or make contract with, that the reason was because of a "federal mandate", or  "export rule", etc., which may imply government interference, however, that suggestive response had nothing to do with the reason for discrimination.

30.  Dealerships' unhappy sales staff thinking of the sales they can make today, rather than thinking about the long-term sales average, typically refused to sell new vehicles to cross-border shoppers, blaming the injustice on the VW restriction.

**The Effect Of The Conspiracy**

31.  As a direct effect of Defendants' anticompetitive, deceptive, unfair, unconscionable conduct, Consumers were denied access to an alternative channel of distribution of new vehicles and forced to pay artificially high prices;

32.  Inter-brand price competition in the sale of new vehicles in the United States and Canada has been monopolized, suppressed and restrained;

33.  Defendants willfully denied their staff sales, that would have come from these cross-border shoppers. The refusal to allow the sale of new vehicles on the basis of the Defendants' discrimination has interfered with the staff's basic right to a fair wage.

34.  The Defendants have been unjustly enriched by the conduct described herein.

**Factual Allegations**

35.  Since on or about October 5th, 2007, the Plaintiff tried to purchase two new VW manufactured vehicles, a 2008 Jetta and a 2008 Passat. By buying the vehicles in Washington the savings as describe herein would roughly be US$17,000.00.

36.  Defendants' Roger Jobs Volkswagen in Bellingham is the closest Washington VW Dealership to the Plaintiff's home, a 59-minute drive away. The Plaintiff went to this Dealership for the sole purpose of buying a new VW vehicle. The Dealership stated that it was their company policy not to sell new vehicles to Canadians and for that reason, refused to sell to the Plaintiff.

37.  The Plaintiff then visited the second closest VW Dealership, the Defendants' Karmart Volkswagen in Burlington, WA. After selecting one of the new vehicles and agreeing on paying the 'invoice price', the Plaintiff produced a US$2,500 cash deposit for the salesman. During the exchange of information, the salesman canceled the contract offer to sell because the Plaintiff was of Canadian national origin.

38.  To solve the complaint of discrimination Mr. Robert Campbell, the owner of the Defendants' Karmart Volkswagen offered to sell the Plaintiff a new vehicle. Mr. Campbell explained that in order to get around his policy of not selling new vehicles to Canadians, he would buy the vehicle on the Plaintiff's behalf, title it, and sell it as a [used vehicle]. Mr. Campbell offered to do this for an extra $2000 fee and conveyed that even with the extra $2000 fee, the savings would still be thousands compared to buying the vehicle in Canada.

39.  Upon denial of the sale of a new vehicle by both Dealerships, the Plaintiff contacted VW to complain and warn regarding the blatant discrimination. VW responded saying there was nothing they can do, they explained that it was because

of a Federal Mandate that they couldn't allow their Dealerships in the US to sell to Canadians, and their Dealerships in Canada to sell to Americans. After confirming from with both the US/Canada export offices that no such Government Federal Mandate existed, the Plaintiff again contacted VW. This time VW changed their explanation and said it was just a company restriction they had in place, and provided a written signed copy of this policy / restriction to the Plaintiff.

40.  While waiting for a reply from the Defendants in response to this complaint of discrimination, the Defendants' Hanson Motors Inc. Dealership sold the Plaintiff a new vehicle, a 2008 Passat. The Dealership is located in Olympia, the 11th Washington VW Dealership away from the Plaintiff's home.

41.  Then on November 7th, 2007, the Plaintiff was ready to purchase the second new vehicle, a 2008 Jetta. The Plaintiff contacted the same Defendants' Hanson Motors Inc. Dealership, but this time they refused to sell, and defended their policy to discriminate on the basis of national origin. They stated it was because the Plaintiff was Canadian.

**INJURY AND THREATENED INJURY TO PLAINTIFF**

42.  During the period covered by this Complaint, the Plaintiff was denied the right to purchase a new vehicle from each of the Defendants' Dealerships at different times. As a direct result of the Defendants' discriminatory policy to deny sales of new vehicles to Canadians, the Plaintiff is forced to purchase the second new vehicle in a marketplace that is less competitive than it otherwise would be and pay a higher price than would exist absent the Defendants' conduct. In addition, the Plaintiff expended extraordinary effort, time and expense in procuring the new vehicles. As a result of the alleged misconduct, the Plaintiff has suffered economic injury and been denied the right to make and enforce contracts and to obtain goods at places of public accommodation. Because the Defendants' discriminatory practices and policies are ongoing, the Plaintiff is threatened with similar injury in the future.

**Count I (42 U.S.C. § 1981)**

43. The Defendants designed, implemented and promulgated policies and practices, which intentionally denied the sale of new motor vehicles, effectively violating the rights of the Plaintiff to make and enforce contracts. (Reference paragraphs 1-42 as though completely reproduced herein.)

*44.* The Plaintiff pleads that Defendants' conduct described herein is a violation of 42 U.S.C. § 1981 which provides in relevant part:

*All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…*

**Count II (42 U.S.C. § 1985)**

45. The Defendants collaborated and conspired to design, implement and promulgate the discriminatory practices described herein, and in so doing conspired to deprive the Plaintiff of equal privileges under the law. (Reference paragraphs 1-42 as though completely reproduced herein.)

46. The Plaintiff pleads that Defendants' conduct described herein is a violation of 42 U.S.C. § 1985 which provides in relevant part:

*If two or more persons in any State or Territory conspire… for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...*

**Count III (42 U.S.C. § 2000a)**

47. The Plaintiff while physically in the jurisdiction of Washington was refused the equal enjoyment of the goods [a new vehicle] from the Defendants' Dealerships, on the basis of his national origin. (Reference paragraphs 1-42 as though completely reproduced herein.)

48. The Plaintiff pleads that Defendants' conduct described herein is a violation of 42 U.S.C. § 2000a which provides in relevant part:

*All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities… without discrimination or segregation on the ground of race, color, religion, or national origin.*

### Count IV (Sherman Act 15 U.S.C. § 1)

49. The Defendants', Automobile Dealer Sales and Service Agreement / Franchise Agreement (Contract) prevents the sale of new vehicles to Canadian / American cross border shoppers alike, which restraints trade as described, reference paragraphs 1-42 as though completely reproduced herein, violates Sherman Act 15 U.S.C. § 1 which provides in relevant part:

*Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.*

### Count V (Sherman Act 15 U.S.C. § 2)

50. The Defendants' conspired to inter-brand monopolize the US/Canada market by preventing the sales of new vehicles as described, reference paragraphs 1-42 as though completely reproduced herein, violates Sherman Act 15 U.S.C. § 2 which provides in relevant part:

*Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations.*

### Count VI (Sherman Act 15 U.S.C. § 3)

51. The Defendants', Automobile Dealer Sales and Service Agreement / Franchise Agreement (Contract) restricts the sale of new vehicles to Canadians and

Americans alike restraining trade as described, reference paragraphs 1-42 as though completely reproduced herein, violates Sherman Act 15 U.S.C. § 1 which provides in relevant part:

*Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade… Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a felony…*

### Count VII (15 U.S.C. § 45)

52. The Defendants conduct described, reference paragraphs 1-42 as though completely reproduced herein, is an unfair business practice with regards to both Canadian and US residence equally and accordingly violates 15 U.S.C. § 45 which provides in relevant part:

*Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.*

### Prayer For Relief

53. Wherefore, Plaintiff prays for relief as follows:

   a. Request that this Court issue a declaratory and injunctive relief ordering Defendants to stop their anti-competitive behavior, requiring that Defendants sell to Canadians and Americans alike, and not to discriminate on the basis of national origin, residency, citizenship or any other form of discrimination;

   b. Restitution; compensatory damages; punitive damages; fees and costs; and

   c. Such other relief as the Court deems just and proper.

54. Plaintiff pleads that if Defendants' conduct if not enjoined by this Court, both Canadian and American Consumers alike, and sales staff will continue to suffer damages.

Respectfully submitted,

Dated: November 15, 2007

Skye Taylor (*Pro Se Litigant*)
349 – 1917 West 1st Avenue
Vancouver, B.C., V6J 1M7, Canada
tel:604-739-7593
fax:604-739-1722
skye@miona.com