UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SKYE TAYLOR,

    Plaintiff,

    v.

VOLKSWAGEN OF AMERICA, INC., *et al.*,

    Defendants.

Case No. C07-1849RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS SOME OF PLAINTIFF'S CLAIMS

## **I. INTRODUCTION**

This matter comes before the Court on motions to dismiss some of plaintiff's claims (Dkt. ## 18, 26, 30) filed by defendants Volkswagen of America, Inc. ("Volkswagen");[1] Hanson Motors, Inc.; Rogers Jobs Motors, Inc.; and Cascade Chrysler, Inc. (collectively, "defendants"). Plaintiff, who is proceeding *pro se*, alleges that Volkswagen has discriminated against him because he is Canadian by prohibiting its dealerships, three of whom are also defendants, from selling new vehicles to Canadians. Plaintiff also alleges that the practice constitutes an antitrust violation under the Sherman Act, 15 U.S.C. § 1 *et seq.*

For the reasons set forth below, the Court grants in part and denies in part defendants'

---

[1] Volkswagen is the distributor of new Volkswagen vehicles in the United States.

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS - 1

motions.[2]

## II. DISCUSSION

**A.  Background Facts.**

Plaintiff resides in Vancouver, British Columbia, Canada.  He alleges that in October 2007, he sought to purchase a new Volkswagen automobile from Roger Jobs Volkswagen in Bellingham.  Because of the weak American dollar, plaintiff alleges that he could have saved approximately 30% of the cost of the vehicle by purchasing it in the United States instead of in Canada.  The dealership refused to sell plaintiff a new Volkswagen.  Plaintiff was informed that pursuant to company policy, the dealership does not sell new vehicles to Canadian residents. Plaintiff had a similar experience with defendant Cascade Chrysler, Inc. which does business as Karmart Volkswagen.  Plaintiff then contacted Volkswagen to complain, but to no avail. Plaintiff subsequently purchased a new vehicle from defendant Hanson Motors, Inc. in Olympia, but that dealership refused to sell him a second vehicle.

Plaintiff alleges that defendants have conspired and agreed with each other and with their Canadian counterparts not to sell new vehicles to individuals who will take them across the border.  Plaintiff contends that they have done so illegally to eliminate "all competition whatsoever between the two markets" and artificially inflate prices.  Plaintiff's Response at p. 5.

Plaintiff alleges seven claims against defendants.  The first two, which are not subjects of this motion, are for (1) denying plaintiff his right to make and enforce contracts under 42 U.S.C. § 1981, and (2) depriving plaintiff of equal privileges under the law in violation of 42 U.S.C. § 1985.  Defendants seek to dismiss plaintiff's other five claims.  In response, plaintiff agreed to the dismissal of his claims for (1) violation of Section 3 of the Sherman Act, because that section only deals with trade in territories of the United States and District of Columbia, whereas

---

[2]  Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, the request for oral argument from Volkswagen of America, Inc.; Rogers Jobs Motors, Inc.; and Cascade Chrysler, Inc. is denied.

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS - 2

1 plaintiff alleges that the relevant conduct occurred in Washington state, and (2) violation of 15 U.S.C. § 45 because that section does not include a private right of action.

The remaining subjects of these motions are plaintiff's antitrust claims under Sections 1 and 2 of the Sherman Act, and his discrimination claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"). Plaintiff seeks damages, a declaratory judgment, and injunctive relief.

**B.    Dismissal Standard.**

Defendants have filed a 12(b)(6) motion for failure to state a claim upon which relief can be granted. The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true. See, e.g., Oscar v. Univ. Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1966 (2007) (internal citation and quotation omitted).

In this case, because this is a 12(b)(6) motion, the Court has not considered the factual allegations in plaintiff's opposition memorandum that do not appear in his complaint. See, e.g., Schneider v. California Dep't of Correction, 151 F.3d 1194, 1197 (9th Cir. 1998). Similarly, the Court has not considered the unpled factual allegations in defendants' memoranda, which include the alleged reason for its policy not to sell to Canadian residents. Defendants' Motion at pp. 2-3 n.2.

**C.    Analysis.**

    **1.    42 U.S.C. § 2000a.**

Plaintiff alleges that defendants violated Title II, which prohibits discrimination based on protected categories, including national origin, in the provision of "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

accommodation." Not every business that is open to the public is a "public accommodation." Instead, that term is narrowly, and comprehensively, defined to include:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests . . . ;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b)(2). A corporation such as Volkswagen is not a listed entity or analogous to one, and plaintiff makes no arguments to show that it is a public accommodation.

As for the dealerships, it does not appear that Congress intended to cover retail establishments. First, the definition section above includes a detailed list of establishments, none of which is a retail store. Second, the definition includes cafeterias, lunchrooms, and any facility "located on the premises of any retail establishment . . . ." The clear implication of this provision is that Congress did not intend to include retail establishments. If it had, there would be no need to state that restaurants within retail establishments are covered. See, e.g., Priddy v. Shopko Corp., 918 F. Supp. 358 (D. Utah 1995) (holding that a retail establishment was not a public accommodation); see also Newman v. Piggie Park Enterprises, Inc., 377 F.2d 433, 436 (4th Cir. 1967) (explaining the history of discrimination and why Congress covered restaurants but not retail stores: "The sense of this plan of coverage is apparent. Retail stores, food markets, and the like were excluded from the Act for the policy reason that there was little, if any, discrimination in the operation of them").

Plaintiff makes some creative arguments, including that dealerships are places of exhibition because they exhibit automobiles. However, if his argument were accepted, every

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS - 4

retail establishment that physically offers goods for sale, and thereby "exhibits" them, would be a place of exhibition. Plaintiff argues that unlike with most retail establishments, the majority of people who visit a dealership do so to view, rather than to purchase, the vehicles. However, the same could be said of most retailers of big-ticket items. Moreover, the plain language of the statute, which includes theatres, concert halls and "other place of exhibition or entertainment," does not support such a broad interpretation of the term "exhibition." In addition, the dealership's primary purpose is to sell, not "exhibit" automobiles. That fact also undermines plaintiff's argument that the dealerships are places of exhibition because they provide some amenities, like comfortable waiting areas and coffee, to attract potential customers and their families. Their "tangential" services do not transform them into covered entities. See, e.g., Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 432 (4th Cir. 2006) (explaining that a beauty salon was not a "place of entertainment" because it "primarily offer[ed] body maintenance services with tangential entertainment value"). Because defendants are not public accommodations, plaintiff's Civil Rights Act claim must be dismissed.

### 2. Section 1 of the Sherman Act.

Plaintiff alleges that defendants have violated Section 1 of the Sherman Antitrust Act by agreeing among themselves and with their Canadian counterparts not to sell new vehicles to customers from the other side of the border in order to increase their profits. Section 1 states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

Defendants argue that plaintiff has not stated a Sherman Act claim because the Act does not apply to export conduct with foreign nations unless "such conduct has a direct, substantial and reasonably foreseeable effect" on the domestic economy. 15 U.S.C. § 6a(1). However, in light of the fact that plaintiff is *pro se*, the Court construes his complaint liberally, and will not require him to use magic words to describe the effect on the domestic economy. Instead, it is

sufficient, at this stage, that the complaint alleges potentially widespread effects on the economy, including substantially higher prices for domestic consumers. In addition, plaintiff has not alleged an antitrust violation based solely on the refusal to sell to Canadians. He has also alleged that defendants have conspired to prohibit U.S. residents from importing new vehicles from Canada. Defendants argue that plaintiff lacks standing to pursue that claim. However, plaintiff is alleging that he was injured as a result of the same policy and practice, which increased prices for consumers on both sides of the border. "Higher prices for consumers resulting from antitrust violations are antitrust injuries." In re New Motor Vehicles Canadian Export Antitrust Litig., 2006 U.S. Dist. Lexis 10240 at *16 (D. Maine 2006) (citing numerous cases). Plaintiff therefore has standing to challenge the practice. See, e.g., id. (finding that class members had standing to challenge alleged conspiracy by defendants to prevent new Canadian cars from being imported into the United States even if they did not personally pay higher prices); see generally Blue Shield of Virginia v. McCready, 457 U.S. 465 (1982); Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 109-113 (1986).

Defendants also argue that plaintiff has alleged only a vertical agreement between Volkswagen and its distributors, as opposed to a horizontal agreement between entities at the same level of distribution. See, e.g., Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 730 (1988). Although plaintiff's complaint is not explicit on this point, he does allege that defendants "have conspired amongst each other *and their related affiliate Dealerships* . . . .: Complaint at ¶ 2 (emphasis added). An agreement among the dealerships not to sell to certain groups of consumers would constitute a horizontal restraint. Defendants have not provided any arguments in support of dismissing that claim, and the Court declines to do so at this point.[3]

Defendants' alleged vertical restraint does not include price fixing or otherwise appear to

---

[3] The Supreme Court has held that horizontal market divisions and concerted refusals to deal are *per se* illegal. See, e.g., Timken Roller Bearing Co. v. United States, 341 U.S. 593 (1951); Fashion Originators' Guild, Inc. v. FTC, 312 U.S. 457 (1941).

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS - 6

be *per se* illegal, so the Rule of Reason applies. See generally Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 54 (1977) (explaining that vertical restraints, by definition, limit intrabrand competition by limiting the number of sellers who compete to sell to a group of buyers). The Rule of Reason asks whether the restrictive practice at issue imposes "an unreasonable restraint on competition." Id. at 1569; see also Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679 (1977) (explaining that "the inquiry mandated by the Rule of Reason is whether the challenged agreement is one that promotes competition or one that suppresses competition"). Plaintiff argues that the restraint is unreasonable because it restricts competition and results in higher prices for consumers. The most analogous case is In re New Motor Vehicles Canadian Export Antitrust Litig., 307 F. Supp. 2d 136 (D. Maine 2004), in which purchasers and lessees of new vehicles sued manufacturers, distributors, and dealers' associations for conspiring to prevent less expensive Canadian vehicles from entering the U.S. market.[4] Defendants in that case "required Canadian dealers to agree not to sell to anyone who would take a new vehicle into the United States." Id. at 138. The court dismissed the federal damages claim on the basis of Illinois Brick Co. v. Illinois, 431 U.S. 720, 730-31 (1977) because plaintiffs did not sue the dealerships involved in the scheme, so it was possible that they could receive duplicative recoveries from defendants and the dealerships. Defendants have not alleged that plaintiff's complaint suffers from a similar infirmity. Moreover, the court denied defendants' motion to dismiss plaintiffs' claim for injunctive relief.

Defendants also argue that this case is similar to K & R Leasing Corp. v. GM Corp., 551 F. Supp. 842 (N.D. Ill. 1982), in which plaintiff, an automobile distributor, alleged a Sherman Act violation after GM cancelled its contract for the sale of automobiles after learning that plaintiff intended to ship them overseas. The court found that plaintiff failed to state a claim,

---

[4] Volkswagen and the other defendants in this case are not defendants in In re New Motor Vehicles Canadian Export Antitrust Litig. Some of the defendants in that case are being represented by defense counsel in this case.

even though it alleged that GM refused to sell the vehicles in order to protect its overseas dealers from intrabrand competition. The court noted that GM was entitled to protect its authorized distributors from intrabrand competition "if that intrabrand competition consists of free riding on the promotional and service efforts of authorized dealers." K & R Leasing Corp., 551 F. Supp. at 844. In this case, there is no evidence that the purpose of the restriction is to prevent free riding. Instead, plaintiff has alleged that the purpose of the restriction is to eliminate cross-border competition. In addition, defendants in this case, unlike in K & R, have not cancelled a contract with just a single would-be distributor. Instead, they have refused to sell to entire categories of consumers.

Certainly, defendants' conduct may, with the benefit of more evidence, prove to be reasonable. However, at this stage in the proceedings and based solely on the pleadings, there is no evidence about why the restrictions are in place. Accordingly, the Court cannot rule as a matter of law that the restrictions are reasonable. The Court therefore denies defendants' request to dismiss plaintiff's claim under Section 1 of the Sherman Act.

### 3. Section 2 of the Sherman Act.

Section 2 provides, "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. Plaintiff's complaint vaguely alleges: "Conspiracy to inter-brand monopolize violates 15 U.S.C. § 2." Complaint at ¶ 3(f); id. at ¶ 32 ("Inter-brand price competition in the sale of new vehicles in the United States and Canada has been monopolized, suppressed and restrained"). However, he has not alleged any facts to support such a claim. Nor has he made any allegations "relating to market share, to the possibility that any kind of monopoly could be established, or to intent on anyone's part to establish a monopoly." K & R Leasing Corp., 551 F. Supp. at 847 (dismissing plaintiff's Section 2 claim).

Perhaps recognizing the deficiencies in his claim as pled, plaintiff has abandoned his

1 claim of an interbrand monopoly. Instead, his memorandum alleges that defendants have
2 conspired to *intrabrand* monopolize the U.S./Canada market. He contends that defendants, and
3 their counterparts in Canada, have agreed to "group boycott" the market in the other country,
4 which "eliminates all competition whatsoever and creates an anticompetitive monopolization of
5 the market." Plaintiff's Opposition at p. 26.

6 Plaintiff alleges that because dealerships in one market, defined as either the United
7 States or Canada, cannot sell to consumers in the other market, a monopoly exists. In
8 considering the existence of a monopoly, however, the Court must also consider the product
9 market in addition to the geographic market. In this case, the relevant market is not just new
10 Volkswagen cars; it encompasses those vehicles and "all other comparable new cars." Gregoris
11 Motors v. Nissan Motor Corp., 630 F. Supp. 902, 908-09 (E.D.N.Y. 1986) ("To have a
12 monopoly power that is violative of § 2, Nissan or the two dealerships must have the power to
13 control or restrict competition in the sales of all new cars in this area, not only new Nissan
14 cars"); see also United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 394 (1956)
15 ("When a product is controlled by one interest, without substitutes available in the market, there
16 is monopoly power"). Plainly, there are numerous types of new cars for sale in each market.
17 Plaintiff does not even allege, must less offer facts to support, that defendants have or attempt to
18 have monopoly power over all new car sales in their respective geographic markets.
19 Accordingly, his claim under Section 2 fails as a matter of law.

### III. CONCLUSION

21 For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

defendants' motions to dismiss (Dkt. ## 18, 26, 30) as set forth above.

DATED this 3rd day of March, 2008.

_____
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO DISMISS - 10